IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LAWRENCE ALLEN, | Case No. _____ |
| Plaintiff, | COMPLAINT |
| vs. | JURY TRIAL DEMANDED |
| CHRIS MONICO and JONATHAN KOSSOW, | |
| Defendants. | |

1. The plaintiff is a citizen of the State of Colorado.

2. The defendant Chris Monico ("Monico") is a citizen of the State of Nebraska. At all times relevant Monico was a police officer employed by the City of Lincoln, Nebraska, a municipal entity created and authorized under the laws of the State of Nebraska, and all of his acts described below were under color of state law. The plaintiff sues Monico under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 in his individual capacity only for depriving him of rights guaranteed to him by the United States Constitution, as described below.

3. The defendant Jonathan Kossow ("Kossow") is a citizen of the State of Nebraska. At all times relevant Kossow was a police officer employed by the City of Lincoln, Nebraska, a municipal entity created and authorized under the laws of the State of Nebraska, and all of his acts described below were under color of state law. The plaintiff sues Kossow under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 in his individual capacity only for depriving him of rights guaranteed to him by the United States Constitution, as described below.

Jurisdiction and Venue

4. The court has jurisdiction over the plaintiff's federal constitutional claims pursuant to 28 U.S.C. §§ 1331 and 1343.

5.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2).

Facts

6.     On August 6, 2016, Monico, in coordination and agreement with Kossow, arrested the plaintiff without a warrant and booked him into the Lancaster County, Nebraska, jail.

7.     Following the arrest of the plaintiff, Monico executed a thirteen-page "Affidavit of Probable Cause," a true copy of which is attached hereto as Exhibit A and incorporated by this reference as if fully set forth herein, and delivered it to prosecuting authorities.

8.     On August 8, 2016, the State of Nebraska, based upon Monico's "Affidavit of Probable Cause," filed a complaint in the County Court of Lancaster County, Nebraska, charging the plaintiff as follows: on or about April 13, 2016, in the County of Lancaster and State of Nebraska, knowingly or intentionally (a) manufacturing, distributing, delivering, dispensing, or possessing with intent to manufacture, distribute, deliver, or dispense a controlled substance; or (b) creating, distributing, or possessing with intent to distribute a counterfeit controlled substance, to wit: Cocaine, a Schedule II controlled substance, an exceptionally hazardous drug, in violation of Neb. Rev. Stat. § 28-416(1)(2)(A). Later that day, the County Court of Lancaster County, Nebraska, based upon Monico's "Affidavit of Probable Cause," entered an order wherein it found probable cause for the detention of the plaintiff, permitting the plaintiff to be released only upon the execution by the plaintiff of an appearance bond in the sum of $100,000.00.

9.     Neb. Rev. Stat. § 29-901(1)(c) gives a bailable defendant the option of executing an appearance bond in the amount specified by the court and depositing with the clerk of the court in cash a sum not to exceed ten percent of the amount of the bond. If the defendant elects this option, upon the performance of the appearance or appearances, ninety percent of the deposit

is returned to the defendant, with the clerk retaining ten percent as appearance bond costs. On August 9, 2016, the plaintiff executed the appearance bond in the sum of $100,000.00, deposited with the Clerk of the County Court of Lancaster County, Nebraska, $10,000.00 in cash, and was released from custody.

10. On February 21, 2017, the County Court of Lancaster County, Nebraska, bound over the plaintiff to the District Court of Lancaster County, Nebraska, for arraignment.

11. On June 25, 2019, the State of Nebraska amended the charge against the plaintiff, such amendment changing only the date of the offense from "on or about April 13, 2016" to "on, about, or between January 1, 2016, and April 13, 2016."

12. On July 15, 2019, a jury found the plaintiff not guilty of the amended charge, and he was released from his bond.

13. Monico in his "Affidavit of Probable Cause" stated, in relevant part:

> On 04-13-2016, I made arrangements with Brown to purchase a 3.5g quantity of cocaine. During this controlled purchase, I followed Brown, who was driving a separate vehicle, to the parking lot of PepperJax Grill at 3200 N 27th St. At 1655 hours, Brown made contact with a white Mitsubishi Outlander SUV displaying Oklahoma license places 617 MHG, which was parked in front of the businesses at 2712 Cornhusker Highway. Investigators on the surveillance detail could see the occupant of the Mitsubishi Outlander was a black male. At 1658 hours, Brown returned to my unmarked narcotics unit vehicle and provided me with a baggie containing 3.8 grams of power cocaine. Brown was

>previously provided with $200.00 of Narcotics Unit buy money for this quantity of cocaine. The substance provided by Brown field tested positive for cocaine. Investigators followed the white Mitsubishi Outlander to attempt to identify the driver and associate other addresses. The white Mitsubishi Outlander was contacted on a traffic stop by Lincoln Police Department Sergeant Hruza #794 near the intersection of Lyncrest/O St. The driver of the white Mitsubishi Outlander, which is a rental vehicle, was being operated by Lawrence V. Allen ....

(Exhibit A, p. 7). The reference by Monico to "Investigators" in his statement, "Investigators on the surveillance detail could see the occupant of the Mitsubishi Outlander was a black male[,]" was in fact a reference to a *single* investigator, namely Kossow. But Kossow never saw any "occupant" of the "Mitsubishi Outlander," let alone the race or gender of such "occupant," during the time "Brown made contact with" it. That is because there was no such "occupant" at that time. Indeed, the statement by Monico was knowingly false, and was the product of a conspiracy by and between Monico and Kossow to fabricate false evidence of criminal activity against the plaintiff. In fact, the plaintiff did not occupy the "Mitsubishi Outlander" at any time between Monico's arrival at the "parking lot of PepperJax Grill" and the time his transaction with "Brown" was entirely concluded and he had left the area. Kossow had monitored the transaction between "Brown" and Monico from the parking lot of the Super Saver grocery store, located at 2662 Cornhusker Highway, on the west side of 27th Street, the side opposite to "the businesses at 2712 Cornhusker Highway." Monico and Kossow had no idea, whether by race or gender or any other identifying characteristic, to whom the "Mitsubishi Outlander" belonged or

who had driven it to that location. In an attempt to find out, but without arousing the suspicion of "Brown," against whom Monico was building a criminal case for narcotics distribution, a plan was developed by Monico and Kossow whereby Kossow would monitor the "Mitsubishi Outlander" until it was driven away and then follow it to determine its destination and, hopefully, the driver's identity. Well after the transaction between "Brown" and Monico had concluded, the plaintiff, who had been inside Judy's Nail and Spa, located at 2712 Cornhusker Highway, exited Judy's, entered the "Mitsubishi Outlander," and drove away. Pursuant to the plan by and between Monico and Kossow, Kossow followed. But after more than five miles and a brief stop by the plaintiff at a CVS Pharmacy store, located at 7002 O Street, Kossow decided to discontinue his tail and radioed for a uniformed law enforcement officer to stop the vehicle to determine the identity of its driver. Todd Hruza ("Hruza"), an officer of the City of Lincoln Police Department, responded to Kossow's request, and initiated a pretextual traffic stop of the vehicle on O Street, between 66th and 56th Streets. Hruza determined that the driver was the plaintiff. After the traffic stop was concluded, Hruza relayed the information he learned to Kossow, who relayed it to Monico. The plaintiff was arrested nearly four months later.

14. There was no probable cause for the arrest of the plaintiff on August 13, 2016.

15. Although it is questionable that Monico's "Affidavit of Probable Cause" provided *any* basis for the State of Nebraska or any other prosecuting authority to charge the plaintiff with *any* crime for anything he did on April 13, 2016, or for the County Court of Lancaster County, Nebraska, to find probable cause for the detention of the plaintiff, without Monico's false statement and materially false omissions, and the conspiracy by and between Monico and Kossow to make such false statements and materially false omissions and fabricate false evidence against the plaintiff, the State of Nebraska would not have charged the plaintiff with

any crime for anything he did "on or about April 13, 2016," or "on, about, or between January 1, 2016, and April 13, 2016." Monico and Kossow knew at the time of Monico's execution of said "Affidavit of Probable Cause" that prosecuting authorities would make a charging decision against the plaintiff based on said "Affidavit of Probable Cause," and knew that, if prosecuting authorities commenced a criminal prosecution against the plaintiff, said "Affidavit of Probable Cause" would be presented to a judge, who would rely thereon in making a determination as to whether to detain the plaintiff pending trial. Monico and Kossow's actions were taken with malice toward the plaintiff.

Claims

Fourth Amendment Against Monico and Kossow (False Arrest/Imprisonment)

16. Paragraphs 1-15 above are re-alleged and incorporated by this reference.

17. By arresting the plaintiff on August 6, 2016, without probable cause to believe that the plaintiff had committed a crime and lodging him into the jail, Monico and Kossow deprived the plaintiff of his right to be free from unreasonable seizures under the Fourth Amendment to the United States Constitution.

Fourth Amendment Against Monico and Kossow (Malicious Prosecution)

18. Paragraphs 1-15 above are re-alleged and incorporated by this reference.

19. By virtue of their conspiracy to fabricate false evidence against the plaintiff, and their actual fabrication of false evidence against the plaintiff in the form of Monico's "Affidavit of Probable Cause," Monico and Kossow deprived the plaintiff of his right to be free from unreasonable seizures under the Fourth Amendment to the United States Constitution.

Fourteenth Amendment Against Monico and Kossow (Substantive Due Process)

20. Paragraphs 1-15 above and re-alleged and incorporated by this reference.

21.     Monico and Kossow's conspiracy to fabricate false evidence against the plaintiff, and their actual fabrication of false evidence against the plaintiff in the form of Monico's "Affidavit of Probable Cause," was conscience-shocking, and therefore Monico and Kossow deprived the plaintiff of his right to substantive due process under the Fourteenth Amendment to the United States Constitution.

### Damages

21.     Paragraphs 1-20 above are re-alleged and incorporated by this reference.

22.     As the direct and proximate result of the actions of Monico and Kossow, the plaintiff has been injured, and the plaintiff seeks damages in an amount to be determined at trial to compensate for these injuries.

### Special Damages

23.     Paragraphs 1-20 above are re-alleged and incorporated by this reference.

24.     As the direct and proximate result of the actions of Monico and Kossow, ten percent of the $10,000.00 in cash that the plaintiff deposited with the Clerk of the County Court of Lancaster County, Nebraska, on August 9, 2016, pursuant to his appearance bond, was retained by the Clerk pursuant to Neb. Rev. Stat. § 29-901(1)(c), and therefore the plaintiff claims special damages against Monico and Kossow in the sum of $1000.00

### Punitive Damages

25.     Paragraphs 1-20 above are re-alleged and incorporated by this reference.

26.     The deprivation of the plaintiff's federal constitutional rights as alleged above was deliberate, wanton, and reckless, and therefore the plaintiff makes a claim against Monico and Kossow for punitive damages in an amount to be proven at trial.

Attorney's Fees

27.   Paragraphs 1-20 above are re-alleged and incorporated by this reference.

28.   As a result of the acts and omissions of Monico and Kossow, the plaintiff has been required to retain the services of an attorney, and is entitled to a reasonable attorney's fee pursuant to 42 U.S.C. § 1988 for the deprivation of the plaintiff's constitutional rights.

Prayer for Relief

Judgment is prayed for against Monico and Kossow as follows:

A.   For damages to compensate the plaintiff for the deprivation by Monico and Kossow of his Fourth Amendment right to be free from unreasonable seizures, and his Fourteenth Amendment right to substantive due process;

B.   For punitive damages in an amount sufficient to adequately punish Monico and Kossow and to deter future conduct of the type alleged in this Complaint;

C.   For attorney's fees pursuant to 42 U.S.C. § 1988; and

D.   For the costs of this action, litigation expenses, and any expert witness fees, and for such other and further relief as this Court deems equitable and proper.

Jury Demand and Designation of Trial

The plaintiff requests that this matter be tried to a jury in Lincoln, Nebraska.

LAWRENCE ALLEN, Plaintiff

BY:   s/ Matt Catlett _____
Matt Catlett, #21699
LAW OFFICE OF MATT CATLETT
Attorney for the plaintiff
701 P Street, Suite 207
Lincoln, Nebraska 68508
Tel.: 402-435-0303
Fax: 877-561-6399
E-mail: matt@catlettlaw.com